NUMBERS 13-10-00190-CR
AND 13-10-00191-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

JESSICA LATRESE
CHATMAN,                                                          Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                            Appellee.

                                                                                                                     
  

 

On appeal from the County
Court at Law No. 5 

of Montgomery County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Benavides  

Memorandum Opinion by
Justice Rodriguez

                                                                                                                                    

                Appellant Jessica Latrese Chatman
challenges her conviction by a jury for possession of marihuana (appellate
cause number 13-10-00190) and criminal trespass (appellate cause number
13-10-00191), both class B misdemeanors.[1] 
See Tex. Health & Safety Code
Ann. § 481.121(a), (b)(1) (Vernon 2010); Tex. Penal Code Ann. § 30.05(a)(1), (d)(1) (Vernon Supp.
2010).  By three issues, Chatman argues that:  (1) the evidence was legally
insufficient to support her criminal trespass conviction because there was a
"bona fide dispute" as to right-of-access; (2) her trial counsel was ineffective
for failing to request a jury instruction on mistake of fact as to criminal
trespass; and (3) the trial court erred in refusing her request, under article
38.23 of the code of criminal procedure, for a jury charge in her marihuana
possession case regarding evidence seized in an alleged illegal entry by the
police.  See Tex. Code Crim.
Proc. Ann. art. 38.23 (Vernon 2005).  We affirm the judgment of
conviction for criminal trespass and affirm as modified the judgment of
conviction of possession of marihuana.

I. 
Background

 

            In mid-March 2009, Chatman was arrested at
the Cricket Hollow Apartments in Montgomery County, Texas.  At the time of her
arrest, Chatman was present in the apartment from which she had been evicted
over three weeks earlier.  The arresting police officers found marihuana in the
apartment and on Chatman's person.

Chatman was charged by complaint and
information for possession of marihuana as follows:  "on or about March
12, 2009, in Montgomery County, Texas, [Chatman], did intentionally or
knowingly possess a usable quantity of marihuana in the amount of two ounces or
less . . . ."  Chatman was also charged by complaint and information for
criminal trespass as follows:  "on or about March 12, 2009, in Montgomery
County Texas, [Chatman], did intentionally and knowingly enter a habitation of
another, namely, Stephanie Eason, without the effective consent of Stephanie
Eason, the owner, and [Chatman] did then and there have notice entry was
forbidden . . . ."  

Chatman pleaded not guilty to both
charges, and her case was tried to a jury.  The jury returned guilty verdicts. 
For the marihuana possession conviction, the trial court sentenced Chatman to
180 days' confinement in county jail, suspended for one year of community
supervision, and assessed a $500 fine; for the criminal trespass conviction,
the court sentenced Chatman to two days in county jail, with credit for time
served, and assessed a $300 fine.  This appeal followed.        

II. 
Sufficiency of the Evidence

 

            By her first issue, Chatman complains that
the evidence was legally insufficient to support her criminal trespass
conviction because a bona fide dispute existed regarding Chatman's right to
access the property in question.

A. 
Standard of Review and Applicable Law

            When conducting a legal sufficiency review, a
court must ask whether "any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt"—not whether
"it believes that the evidence at the trial established guilt
beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); see Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App.
2010).  A legal sufficiency analysis requires the court to view all of the
evidence in "a light most favorable to the verdict."  Jackson,
443 U.S. at 319; see Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim.
App. 2009).  The trier of fact is the sole judge of the facts, the credibility
of the witnesses, and the weight given to testimony.  Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Beckham
v. State, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet.
ref'd).  We do not reevaluate the weight or credibility of the evidence, nor do
we substitute our own conclusions for the trier of fact.  King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc).  Instead, we resolve any
inconsistencies in the evidence in favor of the final judgment and consider
whether the jury reached a rational decision.  Curry v. State, 30 S.W.3d
394, 406 (Tex. Crim. App. 2000).

            Legal sufficiency is measured by the elements
of the offense as defined by a hypothetically correct jury charge.  Villarreal
v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  "Such a charge is one that
accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict
the State's theories of liability, and adequately describes the particular
offense for which the defendant was tried."  Villarreal, 286 S.W.3d
at 327; see Malik, 953 S.W.2d at 240.  The elements of class B
misdemeanor criminal trespass are that:  (1) a person, (2) without effective
consent, (3) enters or remains on the property of another, (4) knowingly or
intentionally, (5) when she had notice that entry was forbidden.  See Day v.
State, 532 S.W.2d 302, 306 (Tex. Crim. App. 1976) (op. on reh'g); see
also Tex. Penal Code Ann. §
30.05(a)(2).  "'Effective consent' includes consent by a person legally
authorized to act for the owner."  Tex.
Penal Code Ann. § 1.07(19) (Vernon Supp. 2010).

B. 
The Evidence

            At trial, the State admitted into evidence
the judgment of eviction against Chatman that was obtained by Cricket Hollow in
justice court on February 12, 2009.  The judgment decreed as follows:

[T]hat
Plaintiff, CRICKET HOLLOW APTS, do have and recover of the Defendant, JESSICA
CHATMAN, possession of the following described premises situated in Justice
Precinct One, Montgomery County, Texas to wit:

 

9700 FM 1907 W #608
WILLIS, TX 77318

 

.
. . Defendant has 5 days to vacate or appeal from this date.

 

            Officer Courtney Yoak of the Willis Police
Department testified that on March 12, 2009, she was dispatched to return the
call of a citizen who had some questions of a civil matter.  Officer Yoak
returned the call; the citizen was Chatman, who informed Officer Yoak that she
had been locked out of her apartment.  Chatman informed Officer Yoak that she
had been evicted from her apartment, was ordered to remove her possessions, and
the time for removing her possessions had passed.  During the call, Chatman
told Officer Yoak that she was currently in the apartment.  Officer Yoak then
received a call from her detective, who was also employed as a security officer
at Cricket Hollow.  Her detective stated that he had received a call from the
apartment manager, Stephanie Eason, requesting assistance with an evicted
tenant who had gained access to her old apartment.  The detective asked Officer
Yoak to investigate the situation.  When Officer Yoak arrived at the apartment,
she and her partner, Officer Brian Skero, entered the apartment and found
Chatman.  Officer Yoak testified that she arrested Chatman because of her own
admission that she had been evicted but was nonetheless in the apartment.

            Juanita Surgers, who was formerly married to
Chatman's uncle and worked as the administrative manager for a justice of the
peace (JP), testified, as well.  Surgers testified that her job involved
handling the financial matters for her JP.[2] 
Surgers testified that during her eviction proceedings, Chatman called her to
ask some questions about the civil process of eviction.  In response to her
questions, Surgers told Chatman that if a landlord obtains a judgment of
eviction but the tenant refuses to leave, the landlord must get a writ of
possession to forcibly remove the tenant.  Surger also testified that Chatman's
judgment of eviction became final because Chatman did not appeal it.

C. 
Analysis

            Citing Hann v. State, Chatman argues
that because Cricket Hollow did not obtain a writ of possession, there
"was a bona fide dispute as to possession of the apartment between
[Chatman] and the apartment complex."  771 S.W.2d 731, 733 (Tex. App.–Fort
Worth 1989, no pet.).  Based on this, Chatman contends that the evidence at
trial was legally insufficient to support the effective-consent element of
criminal trespass.  We disagree that such bona fide dispute existed under the
facts of this case.

In Hann, appellant was arrested
for criminal trespass when he taxied his airplane over a strip of land between
the runway and the hangar he rented to store his airplane; appellant's landlord
owned both the land where the hangar was located and the land on which the
runway was situated.  Id. at 732.  Appellant's landlord had a
long-standing dispute with an adjacent property owner over the strip of land in
question but believed that his tenants had the right to access the strip of
land to cross from the runway to their hangars.  Id. at 733.  The
adjacent property owner believed they did not.  Id.  The court concluded
that because of the ongoing controversy over the legal title to the land and
some "ambiguous or unclear" language in the related legal documents,
"a bona fide dispute exist[ed] between appellant and [the adjacent
property owner] as to whether appellant had rights of access to the
property."  Id.  For this reason, the court concluded no
"rational trier of the facts could . . . have found beyond a reasonable
doubt that appellant's entry on the property was without effective
consent."  Id. at 734.  

In Hann, the rights of the
parties had not yet been adjudicated.  Here, the evidence demonstrates no such
ambiguity or lack of clarity regarding who had the right to access the
apartment.  The judgment of eviction clearly transferred the right of
possession of the apartment from Chatman to Cricket Hollow and ordered Chatman
to vacate the apartment or appeal the judgment.  Because Chatman did not appeal
the judgment, as stated by Surgers, it became final.  Cricket Hollow's failure
to obtain a writ of possession—a civil remedy to forcibly remove an evicted
tenant—does not alter these facts.  Based on the evidence at trial, we cannot
conclude that a bona fide dispute existed over who had the right to access the
apartment.  

Rather, there is ample evidence from
which a rational jury could have concluded beyond a reasonable doubt that
Chatman entered the apartment without the effective consent of Cricket Hollow. 
See Jackson, 443 U.S. at 318-19; see also Day, 532
S.W.2d at 306.  Eason, Cricket Hollow's manager, called security to request
assistance regarding Chatman being present in the apartment despite being
evicted.  Further, Chatman admitted to Officer Yoak that she had been evicted
and that the time had passed for removing her possessions from the apartment. 
The evidence was therefore legally sufficient to support the
without-effective-consent element.  See Tex. Penal Code Ann. §§ 1.07(19), 30.05(a)(2); Jackson,
443 U.S. at 318-19.  Chatman's first issue is overruled.       

III. 
Ineffective Assistance of Counsel

 

            By her second issue, Chatman argues that she
received ineffective assistance of counsel at trial.

 

A. 
Standard of Review and Applicable Law

To establish ineffective assistance of
counsel, Chatman must show that: (1) her attorney's representation fell below
an objective standard of reasonableness; and (2) there is a reasonable
probability that, but for her attorney's errors, the result of the proceeding
would have been different.  See Strickland v. Washington, 466 U.S. 668,
684 (1984); Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.–Corpus
Christi 2006, no pet.).  Whether this test has been met is to be judged on
appeal by the totality of representation, not by any isolated acts or
omissions.  Jaynes, 216 S.W.3d at 851.  The right to "reasonably
effective assistance of counsel" does not guarantee errorless counsel or
counsel whose competency is judged by perfect hindsight.  Saylor v. State,
660 S.W.2d 822, 824 (Tex. Crim. App. 1983).

Our review of counsel's representation
is highly deferential, and we will find ineffective assistance only if Chatman
rebuts the strong presumption that her counsel's conduct fell within the wide range
of reasonable professional assistance.  See Strickland, 466 U.S. at 689;
Jaynes, 216 S.W.3d at 851.  Chatman must prove ineffective assistance of
counsel by a preponderance of the evidence.  See Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing Cannon v. State, 668
S.W.2d 401, 403 (Tex. Crim. App. 1984)).  To prove that counsel's performance
fell below the reasonableness standard, “the record must contain evidence of
counsel's reasoning, or lack thereof.”  Moreno v. State, 1 S.W.3d 846,
865 (Tex. App.–Corpus Christi 1999, pet. ref'd).  Generally, the trial record
will not be sufficient to establish an ineffective assistance of counsel
claim.  Thompson, 9 S.W.3d at 813-14; Kemp v. State, 892 S.W.2d
112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).  This is true
because, normally, a record is silent with regard to counsel's decision-making
processes, and therefore, appellant often cannot rebut the presumption that
counsel's performance was the result of sound or reasonable trial strategy.  Strickland,
466 U.S. at 688; Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App.
1991); see Jaynes, 216 S.W.3d at 855.  In the case of such a silent
record, "the challenged conduct must be 'so outrageous that no competent
attorney would have engaged in it.'"  Roberts v. State, 220 S.W.3d
521, 533 (Tex. Crim. App. 2007) (quoting Goodspeed v. State, 187 S.W.3d
390, 392 (Tex. Crim. App. 2005)).

B. 
Analysis

            Here, Chatman complains that her trial
counsel was ineffective for failing to request a jury instruction on mistake of
fact—i.e., that Chatman formed a reasonable but mistaken belief about a matter
of fact that negated the requisite mental state for the offense.  See Tex. Penal Code Ann. § 8.02(a) (Vernon
2003).  Chatman contends that testimony at trial established that she
reasonably believed that she was legally able to enter the apartment from which
she had been evicted because Cricket Hollow had not yet obtained a writ of
possession from the justice of the peace.  In short, Chatman argues that the
evidence raised the defensive issue of mistake of fact, and the trial court
would have erred in denying a request to include it in the jury charge.

            However, because Chatman did not file a
motion for new trial and did not elicit any testimony regarding trial counsel's
reasons for taking the complained-of actions, there is no evidence in the
record that the actions of Chatman's trial counsel were not the result of sound
and reasonable trial strategy.  See Jaynes, 216 S.W.3d at 855.  And
based on the record before us, we cannot conclude that trial counsel's actions
were so outrageous that no competent attorney would have taken them.  See
Roberts, 220 S.W.3d at 533.  Chatman's alleged mistaken belief regarding
Cricket Hollow's failure to obtain a writ of possession and her resulting right
to enter the apartment was, if anything, a mistake of law, not a mistake of
fact.  See Tex. Penal Code Ann.
§ 8.03(b) (Vernon 2003) ("It is an affirmative defense to prosecution that
the actor reasonably believed the conduct charged did not constitute a crime
and that he acted in reasonable reliance" on either (1) "an official
statement of law in a written order" or (2) "a written interpretation
of the law contained" in a court opinion or "made by a public
official charged by law with responsibility for interpreting the law in
question.").  And the source from which Chatman received her
interpretation of civil eviction law was Surgers, who was the administrative
manager for a JP, not a public official charged with interpreting the law. 
Thus, the evidence did not raise the issue of mistake of law, and Chatman's
counsel did not act unreasonably or incompetently in not seeking a jury
instruction on that issue.

In sum, without specific evidence of
trial counsel's decision-making process and strategy, we cannot conclude that
Chatman has overcome the strong presumption that her trial counsel provided
professional, objectively reasonable assistance. See Strickland, 466
U.S. at 689; Jaynes, 216 S.W.3d at 851.  Because Chatman did not
establish that her trial counsel's performance fell below an objectively
reasonable standard, she has not met the first prong of Strickland.  See
Jaynes, 216 S.W.3d at 855.  Chatman's second issue is overruled.[3]

IV. 
Jury Charge

 

            By
her third issue, Chatman argues that, under article 38.23 of the code of
criminal procedure, the trial court erred in refusing her request in her
marihuana possession case for a jury instruction regarding evidence seized in
an alleged illegal entry by the police.  See Tex. Code Crim. Proc. Ann. art 38.23(a).  Chatman argues that
she raised a fact issue regarding the legality of Officer Yoak and Officer
Skero's entry into the apartment and that she was harmed by the refusal of the
evidentiary instruction because if the jury had resolved the illegal entry
issue in favor of Chatman, the jury would have "been instructed to
disregard all evidence obtained from the officer's unlawful entry . . .
including the 'blunt' and marijuana that formed the basis for [Chatman]'s
possession of marijuana conviction."

Article 38.23 provides as follows:

No
evidence obtained by an officer or other person in violation of any provisions
of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be admitted in evidence against the
accused on the trial of any criminal case.

 

In
any case where the legal evidence raises an issue hereunder, the jury shall be
instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such
event, the jury shall disregard any such evidence so obtained.

 

Tex. Code Crim. Proc. Ann.
art 38.23(a).  To be entitled to the evidentiary instruction, the defendant must
show that the evidence heard by the jury raised a genuine dispute about a
material fact.  Madden v. State, 242 S.W.3d 504, 510 (Tex. Crim. App.
2007).  "The disputed fact must be an essential one in deciding the
lawfulness of the challenged conduct."  Id. at 511.  

If there is no
disputed factual issue, the legality of the conduct is determined by the trial
judge alone, as a question of law.  And if other facts, not in dispute, are
sufficient to support the lawfulness of the challenged conduct, then the
disputed fact issue is not submitted to the jury because it is not material to
the ultimate admissibility of the evidence.

 

Id. at 510.

            Here, the alleged misconduct is Officer Yoak
and Officer Skero's entry into the apartment without proper authority.  Chatman
argues that because Cricket Hollow did not obtain a writ of possession, she
believed she had a legal right to access the apartment, and as a result, she
raised a fact issue regarding who had permission to authorize the police
officers' entry into the apartment.  Chatman's belief regarding civil eviction
procedures, however, has no bearing on the legality of the police officers'
entry into the apartment.  As discussed previously, the evidence clearly
established that Cricket Hollow had the right to possess the apartment through
the final judgment of eviction issued against Chatman, and Chatman admitted as
much when she told Officer Yoak on the phone that she had been evicted and
ordered to remove her possessions from the apartment.  Further, it is
undisputed that Officers Yoak and Skero entered the apartment pursuant to
instructions from Eason, Cricket Hollow's manager.  

Chatman's belief does not contradict the
judgment of eviction or her own admission that she had been evicted and ordered
to vacate.  In other words, Chatman's belief that she had a legal right to
access or possess the apartment does not raise a factual dispute material to
the legality of the officers' entry.  Moreover, there was undisputed evidence
of other facts—i.e., Eason's authorization to enter the apartment—sufficient to
support the lawfulness of the officers' entry.  Thus, the legality of the
police officers' entry into the apartment was appropriately determined by the
trial court.  Chatman's third issue is overruled.  

V. 
Modification of Judgment

 

            The trial court's judgment in Chatman's
marihuana possession case mistakenly recites Chatman's sentence as "0 days
in the Montgomery County Jail" in one of the two places in the judgment
where Chatman's sentence is recited.  Our review of the record shows that the
trial court sentenced Chatman to 180 days' confinement in county jail,
suspended the sentence, and placed Chatman on community supervision for one
year.  Because we have the necessary data and evidence for reformation, we
modify the trial court's judgment to reflect the correct sentence of 180 days'
confinement in county jail in each place the judgment recites the sentence.  See
Tex. R. App. P. 43.2; Bigley
v. State, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

VI. 
Conclusion

 

            For appellate cause number 13-10-00191, we
affirm the trial court's judgment of conviction for criminal trespass.  For
appellate cause number 13-10-00190, we affirm the trial court's judgment of
conviction for possession of marihuana as modified.

            

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the

14th day of April,
2011.

                                                                                                                                                            









[1]
This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont
pursuant to an order issued by the Supreme Court of Texas.  See Tex. Gov't Code Ann. § 73.001 (Vernon
2005).





[2]
Surgers worked for a different JP than the JP who issued the judgment of
conviction against Chatman.





[3]
Although Chatman's attempt at a direct appeal has been unsuccessful, she is not
without a potential remedy.  Challenges requiring development of a record to
substantiate a claim, such as ineffective assistance of counsel, may be raised
in an application for writ of habeas corpus.  See Tex. Code Crim. Proc. Ann. art. 11.07
(Vernon Supp. 2010); see also Cooper v. State, 45 S.W.3d 77, 82-83 (Tex.
Crim. App. 2001) (suggesting that "the legislature may have regarded
challenges to voluntariness as better raised in habeas corpus than on appeal
because the appellate record will often contain insufficient grounds for a fair
resolution of the claim. The legislature may well have decided to render the
issue unappealable but only as a means of encouraging its litigation in habeas
corpus, where a new and more complete record can be developed").  An
application for writ of habeas corpus relief would "provide an opportunity
to conduct a dedicated hearing to consider the facts, circumstances, and
rationale behind counsel's actions at . . . trial."  Thompson
v. State, 9 S.W.3d 808, 814-15 (Tex. Crim. App. 1999).